claims and compounded it by misinterpreting and not following the limitations made of Desotel and Ingram. A prior disposition of a related claim only informs the claimant of the disposition of the other claim if the second claim is denied or discussed. The required discussion of Ingram as to Desotel's limitation is what is missing in the Adams case as the Veterans Court applied Desotel to it as if Ingram did not exist. Yes, we understand the background and it would be helpful to get directly to your best argument. All right. Well, let me ask you, in that regard, you're saying that the court misinterpreted or the Veterans Court misinterpreted or misunderstood the Desotel decision. Certainly that's a question within the scope of our jurisdiction. Desotel sets forth the rule of law and you're saying that the Veterans Court misinterpreted that and that's certainly something that we can fairly adjudicate one way or the other. We can agree with the Veterans Court or agree with your argument. But is that all we can do in this case? In other words, say for the moment that we agreed with you that the Veterans Court did misinterpret the Desotel decision. Would that be the end of our role? Would we then have to send it back to the Veterans Court to re-adjudicate the case in light of what we say is the correct interpretation of Desotel? Or would our job be to go ahead and decide the merits of the case? Do you understand what I'm saying? Yes, Your Honor. You would have to, in my opinion, have to remand it back to the Veterans Court for their determination. Yes, sir. Okay. Let's do proceed with this point of law that we're focusing on, the interpretation of Desotel. All right. In Desotel, the claim was denied because there was no appeal from the regional office decision. It was an earlier effect, and it was denied because Mr. Desotel had not appealed the 1985 decision, which denied his claim or indicated that he did not have a psychiatric disability. They had allowed a claim for a head injury, but in that decision had determined that there was no psychiatric disability. Subsequently, there was a psychiatric disability, and Mr. Desotel asked for an earlier effective date. However, he did not appeal that case, whereas Mr. Adams did appeal his case. The second criteria, I believe, is where the claims were not filed at the same time. Mr. Adams filed his claim six months later, whereas Mr. Desotel filed his claims at the same time, and in the Desotel decision, they made that a criterion where cases were filed at the same time, and therefore, I believe there is that distinction in the veterans court was misinterpreted the whole thing or the rationale in Desotel to the detriment of Mr. Adams. In Ingram, the Ingram court made decided limitations on the Desotel holding, and the veterans court while acknowledging that there were the Ingram decision did not discuss that at all. Specifically, Ingram rejected the, as they determined it, a broad sweeping interpretation of Desotel as to supplanting the pending claim doctrine. Mr. Adams had filed a claim originally for rheumatic heart disease. Six months later, he had filed a claim when he found out he had endocarditis, and the regional office and the VA only adjudicated the claim for an inactive rheumatic velvitis. Well, why isn't it the case that here that the board, and I'm looking at A76, the scope of the board's decision would include not only the rheumatic valvular condition, but also the related heart condition, in this case, endocarditis. The board says in the paragraph discussion decision that the medical records do not disclose active rheumatic fever or other active cardiac pathology during service. The scope of that description seems to me to encompass a heart condition more generally than the specific diagnosis, number one, of rheumatic valvular disease. There's a difference in the type of heart diseases. Yeah, but they're related, right? Endocarditis is often associated, as I understand, the medical condition with rheumatic fever, and it is a valvular condition. Even his description and his appeal was to a heart condition, which presumably would encompass not only the specific diagnosis for rheumatic valvular condition, but any other related condition, don't you think? Well, in this case, sir, in this case, the VA themselves differentiates between rheumatic heart disease and endocarditis. There is the diagnostic codes 7000 and 7001, where they differentiate between, and they're separate diseases. Now, also, I would like to point out that in the May 1991 hearing at the board, the board determined that they were going to send the case back to the regional office for an initial consideration of endocarditis. That is a, let's see, I believe that is a JA93 in the joint appendix. Right, but the board characterized these two diagnoses essentially, and I think this is their language, two theories for one claim. Why isn't that a fair characterization of what's going on here? Nobody was quite sure, presumably, that there was a diagnosis at one point of endocarditis secondary to the rheumatic heart condition. So there was clearly a perception that there was something related going on here, and the ultimate decision was heart condition claim denied. Why didn't that encompass any theory of endocarditis as well as a theory of a rheumatic heart condition? The reason is, Judge Hall, is that the VA consistently in their adjudication of this case characterized it as rheumatic inactive valvular disease. They made no reference, they never made a 1991 board decision. The initial claim was for rheumatic heart disease. When Mr. Adams filed the claim for endocarditis, it was in association with, he made that almost as a second claim in October, and he never received a decision relative to endocarditis, which the VA acknowledges are separate and distinct diseases. As a matter of fact, I think that would be covered in EFRM, where a second claim, even though related, is a distinct claim for a second disability. Let's hear from the government, and we'll proceed with your rebuttal as well. Thank you. Thank you, Mr. Potter. Judge Bryson, may I have Judge Shaw's name, please? We'll switch here. I was beginning to feel distinguished. Now I'm back to myself. That's pretty okay. Sometimes the cases are difficult, but we don't need to make it any more difficult for the lawyers. Ms. Cohen. May it please the court, this court lacks jurisdiction to consider the Veterans Court's application of the Schoedl or Ingram to the facts of Mr. Adams' case. To the extent that Mr. Adams makes an argument that the Veterans Court misinterpreted those two cases, the Veterans that you look to the reasonableness of whether the veteran should have known that both of his claims were denied. Do you think we have jurisdiction to do anything in this case? Well, it's a little bit unclear from Mr. Adams' brief, but I believe he does raise two legal arguments. One concerning whether the rule set forth in De Schoedl applies in the case where the RO decision had been timely appealed to the board. The other being whether it applies to the case where the two cases were not filed at the exact same time. Okay, and do we in the government's view have jurisdiction to decide those two questions? Yes. As to the first question, whether an appeal from the RO decision makes the rule inapplicable, the appeal does not affect the rule at all. It doesn't affect the scope of the original RO decision. It does affect the finality in the sense that it's appealed, but once the board makes a decision on the RO decision, then that is just as final as an initial RO decision that had not been appealed. In fact, the facts of this case, the fact that there was a board decision makes the rule even more applicable in that the board specifically said, based on the five RO decisions that were made, that there was no evidence of service connection for a heart condition, encompassing both the endocarditis and the rheumatic valvulitis claim. In terms of whether the two can be filed simultaneously or need to be filed simultaneously, first, as a factual matter, the board found that there was only one claim here. That was the first claim initially filed in April of 1951, and that the subsequent affidavit and medical report that were considered in August and September of 1951 were not separate claims, but were just additional evidence for the same claim. So based upon the board's factual findings, the issue as to whether claims need to be filed simultaneously has not even been raised in this case. Could I take you back to a statement to make sure I heard you correctly? Did you say that the board had characterized the denial in terms of a heart condition? Yes. The board specifically said that, well, the denial was for rheumatic valvulitis, but in the board's decision, the board said that their medical records do not show rheumatic valvulitis or other cardiac pathology, that section that you read earlier. Right. But this was, I was looking for language which I thought you were quoting, but I guess it was just a characterization. At several points along the line, there were references to heart condition. I think in his appeal, as a matter of fact, back in 1951, there was a reference to heart condition, but the board itself didn't use that terminology. Am I correct? That's correct. The terminology was used in at least one of the RO decisions in September of 1951, and was also used in Mr. Adams' appeal in 1951 to the board, as well as the board's certification of the appeal. I'll use the term heart condition or heart disability. The board did specifically say rheumatic valvulitis, but also found that there was no evidence of any other heart condition. Not using the word heart condition, but other cardiac pathology is exactly what the board... One of the things that I find a little confusing about this case is the extent to which we're talking about two theories or two claims. Now, I understand that the board in its most recent decision, accepted by the Veterans Court, characterized the endocarditis claim as a separate claim, an informal claim, but presumably a separate claim. Yet the board has previously characterized this as at least those two characterizations, or is there no inconsistency between them in your view? There's no inconsistency in terms of applying the rule in this case. Assuming that it's one decision or two theories, but one claim, then the rule would be applied just as it was applied in the DeShoto case. There would be no question as to whether it applied to two separately filed claims. However, if they were separately filed claims, in this case, they were part of the same claims process. One was filed in April of 1951. The other, assuming it's the affidavit, would have been filed only six months later. Right, but not at least strictly contemporaneously. They would have been filed at different times, not at the same time, at least on the same day, for example. Do you think that makes a difference in light of DeShoto? No, because they were part of the same claims process in that he had filed his first claim. There was a denial, a reconsideration. He was continuously submitting more evidence related to his heart condition claim. But I'm not sure that filed during the same claims process is really the position that would be consistent with the normal rule that's applied here. For example, if he had come in in April and said, I have a skull fracture, and he'd come in in October and said, in addition, I suffered a knee injury, you wouldn't be arguing that the, I don't think, would you, that the denial of the skull fracture claim would also cover the knee injury, even though there was nothing said about the knee injury, right? No, we wouldn't be arguing that. So it has to do with the relationship between the claims, at least as much as it has to do with the contemporaneity of the two, right? Right. In this case, and that's where the Ingram rule comes in, because in that case, there was a claim for service connection for a disability, and there was a second entirely unrelated claim for non-service connected pension. Well, that's where I get back into wondering about what to do about the finding of the board in the most recent board decision that they were separate claims. Because if they're separate claims, then that begins to make it sound more like a skull and knee set of claims as opposed to two claims or two assertions regarding the same malady. Well, they can be entirely separate claims, as in your example with the skull and knee, or they can be separate, technically separate claims, but on a related issue. Here, in fact, the medical report said that the endocarditis was secondary to the pneumatic falbulitis, showing that they were closely related claims. The rule in DeShoto and in Ingram is that it has to be reasonable that the veteran would think that one claim was implicitly denied when the other claim was denied. So the relatedness of the claims comes in under the reasonableness standard. If the claims, as in this case, are so closely related, they're both very similar heart diseases, then it would be reasonable when the board says something about a heart condition or talks about no, any active symptoms of a heart pathology, that the board would be talking about both the rheumatic falbulitis claim and the endocarditis claim, as opposed to your example, where if the board is involved in a discussion about a skull injury and says nothing about a knee injury, it would not be reasonable for the claimant to think that the knee injury was also covered. It would seem, though, that it could lead to some somewhat murky situations. I mean, for example, just to take my skull and knee, suppose there had been a single incident in service that he'd been hit by a truck, and he says, you know, I fractured my skull and as I fell after the skull fracture, I twisted my knee, and the knee is never referred to after that. It's pretty clear that that's a much less severe condition, but nonetheless, it's a separate medical condition. Would you think under those circumstances that you could say, well, you know, it's covered by the denial with respect to the skull? That would certainly be a closer call, and that's something that the rule requires the RO to look at in the first instance as to whether the language in the RO's decision or the board decision if there is one, whether that could be reasonably read to cover both conditions. So it's possible, depending on how the board looked at the issue, that that would only cover one, or that it would be reasonable for the claimant to believe that it covered both issues. Are these reasons why you respectfully request that you affirm the Veterans Court? Thank you. Thank you, Ms. Conagher, sir. Mr. Potter, have you rebuttaled? Judge Bryson, the question of the closeness of the disabilities or the conditions I submit was covered in the EFRM decision where they said, and these were mental disorders, not chronic disorders, but a claim based on the diagnosis of a new mental, taken alone in combination of prior disorder states a new claim for the jurisdictional requirement when the new disorder had not been diagnosed or considered at the time of the prior notice of disagreement. Mr. Adams really did not know he had endocarditis until he filed his claim in October. And at the time of his appeal to the administrator, he didn't ask for heart conditions, he asked for one heart condition. The only one that was denied was that of rheumatic velvitis that was never the issue of endocarditis. He never got a decision on that until 1991. It was denied and subsequently allowed in 1997, at which time an effective date of as to the reasonableness of this, you're talking about a man with limited education, he has two disabilities, he's received one denial, he's put a second claim in, he expects another, he expects a decision, he didn't get one. When you say he didn't get one, on page 68 there is an appendix 68, the letter that was sent to him after he filed his second claim, his affidavit, says we've taken your affidavit into account and we still deny service connection. But they also said we reconsidered, they did not say they considered the endocarditis, they said we have reconsidered and the consideration that had been given of the original decision was for inactive rheumatic velvitis. They say we've reconsidered your claim for disability compensation. He made a claim and in his second, in his affidavit, he says, well, there are two grounds here. There's the rheumatic valvulitis and there's also the endocarditis and they say, having previously told you that you don't have a claim for disability compensation, we now reconsider and say you still don't have a claim. So I think to read too much into the reconsider would be a little strange. But once again, sir, he never received a decision as to the endocarditis and in the claim when you file the appeal to the administrator, it's in the instructions on the back of that, and that's on JA 70, I believe, about the 13th night down, it's for the agency of original jurisdiction initial claim. The initial claim was for rheumatic heart disease or as they characterized it, rheumatic velvitis. And in his characterization, he calls it my heart condition. Yeah. So he characterizes it more broadly. In the appeal, his typed in section there, I assume that that was done either by him or on his behalf, right? On page 869. I would assume that you're correct, sir, that he signed it and nobody else has signed it. However, the board in 1991 refers the matter of endocarditis back to the regional office for their initial consideration. That is a determination or a concession by the VA that they never considered the claim for endocarditis. Why, I don't know, but they had never considered it and that is a favorable determination by the board. They were bound to, and they can't overrule that, which they did by subsequent decisions. Okay. Anything else you need to tell us? No. Do we have any more questions for Mr. Patek? No. Okay. Thank you. Thank you. Thank you, Mr. Patek. Thank you for your attention and consideration. Thank you. All rise.